This action, begun before a justice of the peace on May 23d, (546) 1884, and after judgment, removed by defendant's appeal to the Superior Court, is upon two notes under seal, each in the sum of $85, and dated and bearing interest from July 8th, 1882, executed to W. H. McDaniel or bearer, and due at nine and twelve months respectively. The complaint alleges that the notes belong to the plaintiff, while they bear no indorsement. The answer sets up many defences, and among them that a contemporaneous agreement was entered into between the parties, of which the execution of the notes was part, by the provisions of which, upon a contingency which has occurred, the said notes were to be surrendered to the defendant; and, if the plaintiffs are verbal assignees, they took the notes subject to all defences that could be made in an action by the assignor.
The agreement has reference to a sale of a patented right, designated as "L. J. Dicht's improvement in bee-hives, patented December 16th, 1873," for the county of Onslow in this State, with certain enumerated privileges elsewhere to be exercised, and contains these provisions: "And it is agreed, that the party of the second part, (the defendant), is to use due diligence in the manufacture and sale of said bee-hives, with the right of use for the same, and the territory for the same, and on failure to make two hundred and fifty-five dollars by the sale of said patent, by the time said notes become due, the contract is null and void; and the deed of said territory, with all other papers, with what has been made by selling said patent, are to be delivered to the party of the first part, and said notes, or two hundred and fifty-five dollars in cash, shall be delivered to the party of the second part."
Upon issues submitted to the jury, they find that the contract set up in the answer was a part of the contract, of which the notes in suit were the other part; that the plaintiffs are not purchasers for value, and *Page 458 
without notice of the defendant's equities against the assignor: (547) and that the defendant has performed his part of the contract.
The matter in controversy presented in the record, was whether the defendant had made the effort and used the diligence required in his stipulation for the manufacture and sale of the patented article, within the defined territory; and upon this issue, the defendant's testimony, which is all the evidence offered, was as follows: "That in the Fall of the year 1882, after the contract was made in July of that year, and also in 1883, after July of that year, he went to Onslow county; that his trip lasted thirty days or more; that he never made a sale of a right to territory under the patent as authorized by the contract, nor of a hive; that he did not find any one in Onslow who wanted one of the hives, although he tried all he could to recommend and introduce them; that he did not manufacture the hives, because he could buy them cheaper at High Point; that he went to High Point to take up the notes in the summer of 1884; that he did not get them, because McDaniel was gone, and witness had never seen him since."
Upon the cross-examination, the defendant said that he had been in the habit of going to Onslow county for several years before making the contract in question; that he drove across the country from his home in Guilford county, a distance of about two hundred and fifty miles, driving a wagon loaded with flour, and that it was his custom to exchange the flour for fish and oysters, which he took back with him on his home trip, and that these trips were generally made in the Fall of the year; that in the autumn of 1882, after the contract was made in July, he went to Onslow county with a load of flour, partly to pay expenses and to exchange the same for fish and oysters; that it generally took thirty days to make the trip to Onslow, nine or ten days to go and eight or nine days to return; that he bought two of the hives from Rufe Summers on the day he made the contract, and took them home and put into them swarms of bees; that afterwards he bought (548) other hives of the same kind, to the number of fifteen at High Point, from one Snow, and had seven of them now; that they were good hives, and he made honey with them, thirty-two pounds in one year, and had no fault to find with them; that when he went to Onslow in the Fall of 1882, he did not take any hive with him to exhibit; that the reason was, he was afraid he would break it to pieces in his wagon; that he did not take the specifications of the patent, nor any plates nor pictures of the hive for exhibition to aid the sale, but took a printed paper with a bee on it, which set forth the advantages of the hive, and how people had made money on it, and explained to the citizens the working and structure of the hive with such aid, and did all he could to make sales, and thinks the people understood the hive *Page 459 
from his descriptions and explanations; that he spent two weeks on the first trip canvassing bee men and those interested in raising bees and honey; that the picture of the bee spoken of might have been on an envelope.
The Court charged the jury, that if they found as claimed by the defendant, that the defendant thoroughly canvassed the territory purchased by him, called the attention of persons there interested in bee culture to the nature and structure of the hive he offered to sell, made two trips to the county of Onslow, in which he spent two weeks thus engaged, but failed to make a sale of either hive or right, then they should find that he exercised due diligence, and that they should find the fourth issue in the affirmative. But on the other hand, that if, as it was claimed by the plaintiffs, the defendant only undertook the sale as a mere incident to his regular trips to Onslow county for other purposes, and took nothing with him to enable him to attract attention to the merits of his hive, neither a model, nor a design, nor any drawings or illustrations, and made no real effort to sell, except when it came in his way, while engaged in his other business, to speak of it to others, then they must answer the fourth issue in the negative. (549)
At the special request of plaintiffs, the Judge instructed the jury, that they were not to consider the alleged effort of the defendant to sell on his second trip, but were confined to the trip in the Fall of 1882, in answering the fourth issue.
The plaintiffs except to the charge on the ground:
1. That the whole evidence of the defendant must be taken together, and that as a whole, the facts presented do not constitute due diligence; and that it was error to instruct the jury that they could in any contingency, under the evidence, find the fourth issue in the affirmative.
2. That the jury did not properly respond to the instructions of the Judge given in the second part of his charge, in which he says the jury might find the fourth issue in the negative, because the evidence did show, without contradiction from any source, as recited in said charge, that the defendant did not take with him the proper appliances to enable possible purchasers to understand the nature of the invention, and if believed by the jury, this state of facts would establish a want of due diligence, and would require the jury to find the fourth issue in the negative.
We are unable to see any just ground for exceptions to the charge as to what constitutes due *Page 460 
diligence under the circumstances, and what falls short of it. How more explicit could it be than in the enumeration of the facts testified to, and upon which the measure of defendant's duty was dependent? The expression, "thoroughly canvassed," in the instructions, comprehends a series of active and energetic efforts to make sale of the hives, and must necessarily be general. It cannot be expected that it should (550) mention them in detail, when the evidence was before the jury, of the acts in which the canvassing consists. The Court does declare the law upon the hypothesis of the acceptance of the facts, in one and another aspect of the evidence, and in our opinion quite as favorably to the plaintiffs as they could ask. It is not always practicable to so separate the facts as to raise a question of law for the Court, for they are often blended, and must be passed on by the jury under appropriate directions of the Court.
Taking the alternative instructions, which upon one statement of the facts, show the exercise of due diligence, and upon the other, want of it, and leaving to the jury to determine what, upon the evidence, were those facts to which the instruction is applicable, the Court has done all required for the rendering of an intelligent verdict.
The second exception to the charge, that the jury did not properly respond to the second part of the instructions, or, in other words, to give due weight to the evidence tending to show the absence of due diligence, is addressed to the discretion of the Judge in an application to set the verdict aside, and cannot be entertained in this Court.
We discover no error in the charge, nor in admitting the contract out of which the defence arises, in evidence. Indeed, this last exception was not urged in the argument, and we suppose was not relied on by the appellants.
The judgment must be affirmed.
No error. Affirmed.
Cited: Spence v. Smith, 101 N.C. 238; S. v. Melton, 120 N.C. 597.
(551)